20-1090. Before we begin, we need to tell you that the panel has determined that the cross-appeal is an improper cross-appeal, just raising issues in support of the principle judgment. So what that means is that we have disregarded Pelley's second brief, and Pelley will not have a second argument. But Pelley can make its second argument as part of its one opportunity to argue. So we will proceed. Mr. Martz. Thank you, Your Honor. Good morning. My name is Gary Martz. I represent John Bean Technologies Corporation. This appeal raises the question of whether the District Court erred in granting summary judgment on Morris' equitable intervening rights defense. And the District Court erred in several respects. Mr. Martz. Yes, sir. This is Judge Wallach. On page 22 of the blue brief, you assert that the most important factor in equitable intervening rights analysis is whether the infringer has recouped its investment. And you build a lot on that. What binding authority do you cite to support this assertion? And where in Section 252 of the Patent Act is recoupment specifically mentioned? Mr. Martz. Well, I'll start with that last question first, Your Honor. Recoupment is not specifically mentioned in Section 252. But Section 252 does refer to, and it links equitable intervening rights to, quote, the protection of investments made or business commenced before the grant of the reissue. And the courts that have applied that language over the years have determined that that protection of investments is no longer needed once the alleged infringer has recouped its investment. Have we so held? Mr. Martz. I don't believe this court has held that explicitly. But I think, you know, it is the only, I mean, when you look at the statute, it is the primary animating factor of the protection that's offered by equitable intervening rights. And the court has, this court has not held that specifically, but the court has mentioned it in the Seattle Box 2 case, recoupment is mentioned in footnote 7. And as well, recoupment played a large role in the Tenth Circuit's decision in the plastic container case, which this court cites a few times in Seattle Box 2. So I think that, yes, the court has not explicitly held that. But I think if that factor is ignored in the analysis, then the equitable intervening rights defense pulls away from the statute markedly, leaving it without... But you'll point out it's equitable. It's equitable. And so the standard of view is a piece of discretion. That's correct. And, but as we pointed out in our reply brief, when you, when there is an equitable defense or any sort of equitable exercise of the court's powers that derives from a statute, there has to be some linkage between the statute and how the Morris made investments. But Morris also made substantial profits over a long period of time prior to the reexamination certificate being issued. And, you know, there were 12 years during which Morris was able to sell its products and recoup profits. And the record shows that even though Morris would not, Morris conceded that it recouped its investment, but it would not quantify that amount. But if you look at the sales that Morris had after the reexamination certificate, this is from 2014 to about 2018 or early 2019, Morris had upwards of $30 million, if I recall correctly, that they had in that period. And we're talking about a much longer period of time during which they were able to recoup their investments from 2002 to 2014. So a conservative estimate is probably that they had profits upwards of $50 million. So there was, there was, given that and given the importance of protecting investments under the statute, it's our argument that the district court abused its discretion in not according sufficient weight to that factor in its analysis. It sort of brushed right by it. But our argument is that given the way that equitable intervening rights is provided under the statute, that the factor that Morris concededly recouped its investment has to be given primary importance in the analysis and has to be weighed pretty heavily. Because that is the purpose of equitable intervening rights is to make sure that a company that made investments prior to reexamination or reissue isn't hamstrung later on in such cases like, I think an example here is the Seattle Box 2 case where the court... Counselor, this is Judge Reynolds. Now, does it matter whether the protection that you're speaking about, the protection of investments and businesses that have been commenced, does it matter that whether those investments or businesses commenced before the grant of the reissue? Is there a limitation there? It does, Your Honor. And that's, that's, that, that derives from the statute as well. The statute specifically says before the grant of reissue, and in this case, reexamination. And this court's cases, this court's cases applying equitable intervening rights have leaned heavily on that. So are you saying, are you saying there's never, never any protection of investments that commenced after reissuance, or let's say recoupment? Recoupment hasn't been complete. There has been no recoupment until after a period of time after the reissuance. Your Honor, I think that the cases, and if you look at this court's decision, going back to the Seattle Box 2 case, there is emphasis, great emphasis put on the fact that those investments were made before reexamination. And, you know, in that case, the, the alleged infringer was allowed to sell its products because, as the court put it, stressing that all of the products were on hand when the reissue patent issued. I guess that there might be some circumstances where there might, where there might be sufficient investment or preparation made before reissue or reexamination, where something that happens after reissue, reexamination would receive some sort of equitable intervening rights protection. But that's not the case here. And the reason why it's not the case here is that the nature of the products at issue is that these are very large pieces of industrial equipment that are installed in poultry processing plants. And by the nature of them, Morris doesn't maintain some big inventory of poultry. I guess to simplify things, let me ask you this. Are you saying that recoupment of investment can never occur after reissuance in order to receive protection? Well, I, no, no, Your Honor, I'm not saying that at all. I think that the recoupment could, could definitely occur afterwards. If you have some situation where there is an extensive inventory that has been built up that the court has allowed, the court would allow the infringer to sell those products after reexamination. That's what happened in the circuit, in that opinion, was very careful to limit that to the sales that were necessary for the infringer to recoup its investment. It did not, and it said in there that there has to be caution taken to make sure that equitable intervening rights don't just effectively nullify the patent. And that's exactly what happened in this case. Does it, does it make a difference that there's only two competitors in this market? I think it makes a big difference, Your Honor, because I think that what we have is that effectively, since there are, since there's only one other competitor for JVT, for John Bean in this market, these equitable intervening rights, which were granted for the life of the patent with no limitation, with no limitation to any sort of investment made before reexamination, effectively it nullified the patent because John Bean is in a position where its lone competitor was allowed now to do whatever it wanted in terms of selling infringing products for the life of the patent because there were no limitations put on this. It wasn't tailored in any way to protect investments that Morris made prior to reexamination. So I think the fact that in this particular case, in this particular case's context, that there was a single competitor, so you would, you would say that the answer to these questions is, is fact-driven. I think it is fact-driven, driven and yeah, Your Honor. So if we have, if we have here a standard to reveal abuse of discretion, and this is a fact question, then how can we overturn the district court? I think you can overturn the district court, Your Honor, because it is an abuse of discretion to apply the factors incorrectly or to weigh them incorrectly. And I think this court's cases over the years in which it has, you know, in maybe not necessarily in the context of equitable intervening rights, where the court hasn't decided this issue very often, but in other equitable defenses where the court has been willing to say that a court, that a district court improperly weighted factors, that a district court applied the factors improperly. And I think that's precisely what the court did here below. The court took the factors and applied them improperly and gave, assigned them improper weighting. And I think that is an abuse of discretion. I think there's also another issue though, Your Honor, that there are issues in this appeal that are not strictly abuse of discretion. There are issues that the district court treated as resolved as, you know, facts that were resolved where the record demonstrates that there were actually genuine issues of material fact. There's an instance where the district court actually drew an inference in favor of Morris, which was the moving party, which is completely contrary to the controlling standard for considering a motion for discretion. And I find with those as well, where the district court made another error in resolving genuine issues of material fact. So it's not just an abuse of discretion standard as well. The court reviews whether there are genuine issues of material fact on a de novo basis. And I would say that drawing an inference in favor of the moving party is certainly an error on the district court's case, part, because inferences are supposed to run in favor of John Bean. I think that there are other instances, in fact, the district court's entire opinion rests almost primarily on the district court's resolution of this, of what it called John Bean's bad faith. But the district court failed to consider altogether Morris' own behavior. Morris is the party that is actually seeking refuge and equity here. And the district court never considered whether Morris acted badly or whether it had clean hands or not. It just sort of brushed right by it. And it's haste to point the finger at John Bean. So given that entire record, Your Honor, I think there are multiple errors here that justify reversing the district court, both its abuse of discretion in the way that it weighed and applied these factors, and also in the way that it treated the evidence by resolving disputed issues of material fact at summary judgment. On page 30, this is Judge Wallach, on page 36 of the blue brief, you say the record shows that Morris willfully imposed the 622 patent. Other than Other than John Shells, on that same page of the brief, Your Honor, there is testimony cited from Terry Wright, who is another executive at Morris, who acknowledged that Morris had considered changing the shape of its auger-chiller's tank to avoid infringing the 622 patent. There is other evidence as well that shows that Morris had an alternative design as long as almost 20 years before the point at which the reexamination certificate was issued. It could have moved to producing a different product, and it did not do that. So there is evidence of that as well. And we've shown where they now claim they have this brand new design that has been in existence since 1995, and that's demonstrated in the record. If there are any more questions at this time, if I have any time remaining, I'll stay with you for a little while. You do, and we will save it for you. Thank you, Your Honor. Good morning, and may it please the Court. This Court should affirm the District Court's grant of summary judgment on equitable intervening rights, because this Court has previously stated that courts have broad equity powers to fashion an appropriate remedy. And that's exactly what the District Court did, not considering just one factor, but seven different factors resulting in a conclusion that equitable intervening rights were appropriate. One of those rights, or one of those factors I'd like to focus on, was one that was only mentioned at the very end of my colleague's discussion, and that has to do with bad faith, particularly the conduct of JBT and the lower court's finding that, in fact, JBT had engaged in bad faith. Reminding the Court that these parties have been in cooling and applied technology, their patent, that resulted in Morris agreeing to stop manufacture and then a settlement payment as well. Only two months later, the 622 patent issued, and quickly after it issued, Morris began hearing in the marketplace that JBT, the predecessor of cooling and applied technology, was telling Morris immediately acted, coming off of the heels of a different dispute, sought advice of counsel, shared that advice of counsel with JBT in the letter that this Court referenced in the prior decision in this case, and as the Court referenced in the prior decision, that letter was received but not responded to. So Morris, in 2002, began believing that JBT agreed with Morris that the patent was both invalid and would not be infringed. And we found out later in this case, in discovery, the reason why JBT chose, affirmatively chose, not to assert the patent, and the Court noted some of this, that JBT chose to pursue business methods instead, or business reasons instead, and made a decision to compete with Morris in the marketplace because it knew, or it suspected, that if it asserted the 622 patent at that time, that, in fact, it could very well put Morris out of business. And that goes to Judge Reyna, your comments about the two competitors, and the lower Court referenced that as well, that, in fact, if Morris were put out of business, the questions of whether or not then the market could be supplied would be raised. JBT purposely chose not to do that, though, in 2002 because it did not want another competitor to come in and fill that market void, and to be a competitor that JBT might have a more difficult time competing against. As referenced in the red brief on page 31, JBT's presence indicated that they would rather have the devil you know in Morris rather than the devil that you don't in some European conglomerate that may come in and be a harder competitor. So they decided to just leave the things the way they were. Even in 2009, your honors, when the parties were involved in a different litigation over a patent that we were actually before this Court 30 days ago on a different appeal, there was a litigation there, and it came up in discovery about the 622 patent, and even then, JBT indicated that it would just leave things the way they were. However, everything changed, or something changed, in 2013 when the business decisions that JBT had made apparently were no longer serving its purposes, so it dusted off the 622 patent, took it back to the Patent and Trademark Office seeking a re-exam, arguing and alleging that there was a substantial new question of patentability on the very same prior art that Morris had identified to JBT in 2002, over a decade earlier, presenting some of the very same arguments in the petition for re-examination. Now, JBT didn't tell the Patent Office this, as we stated in the red brief on pages 32 and 35, or 32 and 33, excuse me. They didn't reveal this information to the Patent and Trademark Office, and the District Court noted it. Counselor, this is Judge Rado. Let me divert your attention just for a minute on something that's still up in the air for me, and that has to do with the recoupment of investment. Now, I understand that the Court said at some point that there was a recoupment of all the investment, but did you, in fact, supply any evidence to the Court as to that? Or were there actual numbers that show cost and profit? Thank you for the question. And in the red brief on page 7, Morris did not, to answer your question, no, there were not specific numbers to that. Morris acknowledged, for purposes of summary judgment, that it had recouped the monetary investment, and again, I would cite you to the red brief at page 7. Morris later discussed that, however, Morris had not recouped brand equity and customer expectations, and that had to do with the years of research and development and improvements and promotion and goodwill from having converted two-thirds of his business to the allegedly infringing product from 2002 all the way to 2013, which is very similar to what we see. Just to be clear, you didn't present any evidence as far as what the actual investments were or the amount of the investments prior to the reissuance and the cost or anything else that would show me, anyway, that there was indeed a recoupment, and if there was, whether it's limited to before the reissuance or continues afterwards. That's correct, Your Honor. Morris acknowledged the monetary recoupment. However, to the point that I think Judge Wallach raised, recoupment being merely one of the factors and is not the actual language of 35 U.S.C.'s 252, nor the main purpose, instead being the protection of investments, and the court, in looking at that, recognized that Morris, much like it's discussed in the red brief at 39, the Gerhardt case— as you want to put it, is to protection of the investment. And if I think I understand your question, Morris did not offer specific evidence with regard to the monetary amounts. However, it did acknowledge that it had monetary recoupment, but it did raise the issues of recoupment with regard to its brand equity. And the customer expectations for the allegedly infringed product, which was a direct competitor with its sole provider in the market, JVT. And that goes to the courts, Judge Reyna, as the lower court spoke about that it would not be equitable to require Morris to eliminate two-thirds of its business that would put Morris effectively out of business. And then leaving the market, perhaps underserved, with only one provider of the allegedly infringing product, and the court found it unequitable. That's a good argument, but the evidence shows that you were fully restored. That whatever reliance you had on John Bean's position, that Morris was fully restored in terms of its investment. And I think that's where the... Sorry. No, go ahead. And I think, Judge Reyna, if I understand your point, I think that the lower court and Morris' position would be it's a broader consideration than that, because it looks to other factors, as I was just talking about, and specifically with regard to JVT's bad faith. Had JVT responded in 2002, and there's evidence in the record that Morris would have pushed its products in a completely different direction since 2002, that Morris has put millions of dollars into R&D efforts and could have sold other products. So, to answer your question, Judge Reyna, while Morris does acknowledge the financial recoupment, JVT's bad faith over the course of well over a decade has to be a factor as well. And it was a factor for the lower court that favored the finding of intervening rights here with regard to the design enhancements that the court characterized as accessories that were designed over the course of that decade for the product that had been alleged to infringe that. If Morris were indeed enjoined from being able to sell that product, if it would be able to continue, two-thirds of its business would be immediately gone. So, with regard to, you know, if it had the opportunity again, had JVT responded in 2002 with the basis of its response to the positions of invalidity, then Morris could have done something different. Or if Morris or JVT had told the Patent Office that, in fact, the prior art it was considering or is presenting as a substantial new question of patentability is art that it had known about for over a decade, the Patent Office might not have instituted the re-exam. It's a substantial new question of patentability where it clearly wasn't new to JVT. And so, to the extent that it was presented, we might have had a different result. Let me also understand this other point. And that said, Morris redesigned its chicken chillers prior to the re-exam. Is that right? I don't believe that's a correct understanding of the facts. With regard, prior to the re-exam, Morris had been selling a product since, I think, 2002, which is the allegedly infringing product. If you're speaking about the point that my colleague raised about a potential design-around, I think there were some initial back-of-napkin-type sketches that were referenced earlier that could be potential design-arounds. And I think my colleague was referencing those with regard to Morris potentially being a willful infringer and not being subject or… Prior to the re-exam, Morris was already selling the products that had been with a design-around. No, they were not. Okay. No, let's clear up the factual record. I think there was a period of time before the 622 patent issue where Morris did sell a prior product. And I don't know if that product, JVT, would allege it to infringe or not because I don't believe that's in the record. However, in 2002, Morris did begin selling the alleged infringing product and sold it consistently until the time of re-exam. And then around 2014, and then again after this court reversed the prior equitable estoppel summary judgment decision of the lower court, I think Morris wrapped up the process for designing a potential design-around that it does now indeed sell. And you'll find that, Your Honor, at the appendix pages 797 to 798. Judge Wallach mentioned John Schell. I believe his affidavit talks about the design-around efforts with regard to an alternative design. And I think that design was introduced into the market in 2019 at a poultry show. I believe that's paragraph 4 on page 796, appendix 796. Does that answer your question, Judge? Yes. Okay. Returning back to the bad faith issue, if I may, even though JVT did not reveal the fact that it had known about the invalidity issue since 2002, it ultimately was able to get the Patent Office to institute re-examination. And as this court found in the prior decision, it obtained substantially different claims. The point we need to make here too, and maybe we should have done a better job in fleshing this out, JVT never told Morris that it was going back to re-examine its own patent in 2013. Over a decade had expired since the 2002 letter. And again, I think there was testimony that Mr. Schell and Morris thought it was a dead horse. However, in 2014, the very first time Morris came to find out about it was when a complaint was filed along with a motion for preliminary injunction. And that was about a month after the re-examination certificate issued. And Morris quickly found himself in a preliminary injunction hearing. And this would be distinguished from all of the cases that JVT cites where, you know, we distinguish these on the facts where the alleged infringer, or I'm sorry, the patentee operated fairly quickly from when either the patent was invalidated or it found out about the alleged infringement. In preparing for this oral argument, Your Honors, one of the things that jumped out to me in all of the cases that were cited by JVT, Plastic Container, Presidio, and all of the others, not a single one of them deals with the bad faith conduct on behalf of the patentee, which is how the lower court considered, or at least one of the main factors that the lower court considered. So, Counselor, let's go back a little bit. So, is it your position that you cannot extend intervening rights beyond recoupment or that you can? Well, the statute... Because, Morris, there's evidence, and it's all statement, but yet the court relied on this, that recoupment occurred. And I guess what I'm exploring is whether these equitable intervening rights can be extended beyond recoupment. And I understand that there's other factors to be considered. But this is a statutory requirement, the protection of investment. And if Morris had already been protected and it had now its redesign, why should the intervening rights extend beyond the recoupment? Because you can't ignore the bad faith issue, Your Honor. If you take the bad faith component out of it, then perhaps that argument has more merit. Okay. Thank you. But I'd like to add to that. I'm sorry. I'm sorry. To add to that, Your Honor, I think the first thing is the bad faith. But then the second thing is recoupment is not what the statute says. And protection of investments... And as Judge Lurie, you said a moment ago, that is an issue that perhaps this court has not ruled squarely on with regard to what 252 may or may not require. So therefore, protection of investment, I'm not aware of any decision from this court that says that it is limited to recoupment. So to answer your question, Judge, that if the statute was only that you made your money back and you're whole, you're not allowed to make any profit, then perhaps. It seems so. And it seems that, and this is also reading the cases, that once you have recoupment of an investment, then there's nothing left to protect. Well, I think that doesn't go to the heart of what is the investment. And the court looked at that and said it's more than just the financial recoupment because Morris, you know, as a battleship, had built its, you know, business up and configured two-thirds of its business around this allegedly infringing product that it was more than just one order that it would get and it would be made whole for that one order. There was more to it than that. And so therefore, that Morris had invested more than just the investment it would have in the sheet metal for that one given product that the order it may have gotten at the time of the reissue or the re-examination. Sorry. Thank you, counsel. I think your time has expired. Mr. Motz has a little rebuttal time. Thank you, Your Honor. I'd just like to start by pointing out that I think Mr. Crane's conception of equitable intervening rights as he argued it here today just shows that what we argued in our brief is true, which is that Morris is trying to use equitable intervening rights as a stand-in for equitable estoppel, which this court has already held does not apply here. Morris is arguing the same exact facts that it argued in the equitable estoppel analysis. And this court held that there was no misleading conduct in the previous case. But counsel, you're asking us to amend the statute to legislate to say that provided that nothing occurs beyond recoupment. That's not on the statute, is it? Not in those terms, Your Honor. But what we're asking the court to do is not to amend the statute or import any sort of language into the statute. What we're asking the court to do is to apply the statute. And the court has to determine how that is to be done. And what the court has to do is when there is an equitable defense provided by a statute, that equitable defense, as it's applied by this court, has to have some connection to the purpose of the statute. And the purpose of the statute, the purpose of 35 U.S.C. 202 is the protection of investments. And as courts have held, as we cited in our brief, once you've recouped your investment, there's nothing left to protect. And that's certainly the case here. And Morris stipulated before the district court that they recouped their investment. And I think that they declined to provide any sort of quantification of that amount of recoupment. Because I think the amount in question would be very large. These are very expensive pieces of equipment that sell at very large profits. And as we showed, they had over $30 million in profit just for a four-year period. But isn't investment in a product, isn't it continuing to develop the product and to maintain it? And it seems to me that investment in a product doesn't end on day one when the product is marketed. There are follow-on developments. And so, and here again, we're dealing with an equitable determination by a trial court. And that's subject to an abuse of discretion standard. Well, and Your Honor, and I will repeat what I said earlier, which is that by not connecting its analysis to the concern that animates the statute, the district court abused its discretion. You know, the abuse of discretion standard does not allow the district court to just simply apply whatever standard it wants simply because it has discretion and simply because equity is in play. The court has to link its exercise and its application of equity and its application of discretion to the statute. And again, it is an abuse of discretion not to give any weight in the analysis. And that's the key thing as well, Your Honor. It's not as if the court gave, made a discussion of recoupment and then decided that other factors simply outweighed it. It didn't really give it any weight in the analysis at all. And if the court allows the district court to use its discretion as it did here and as Mr. Crane urged the court to do in his argument, equitable intervening rights essentially gets collapsed into the district court's determination of who's good and who's bad. Counselor, it seems to me that you want us to read into the statute factors that are just not there. It says protect the investment. And can't that take various forms, including goodwill or a business reputation? That's part of an investment. But what the statute does not say is when does this protection end and begin? I think the statute leaves that to the discretion of the court. Yes, Your Honor. I think that is true that there is, but that discretion is not unbounded or unlimited. And again, I think it just keeps- Well, it is on our application of the standard abuse of discretion. That's where we find out whether the application of the court's discretion has been abused or not. Yes, Your Honor, and that's precisely what we're asking the court to do, which is to examine the way that the district court applied the statute. And again, I think the factors that we've listed in the brief, which derive from- If you look at the case that we cited, the Visto Corp case, those factors derive from this court's application of equitable intervening rights in the Seattle Box 2 case. The first four factors are all mentioned in Seattle Box 2. The fifth and the sixth factors come from the Tenth Circuit's decision in plastic container. There has to be some sort of guidance for the district court in how to apply its discretion and how to apply equity. And it is an abuse of discretion for the district court to simply apply those factors in an incorrect manner or to not give a sufficient weight to the factors. That's the standard of review. And I think that the standard of review does not allow the district court to engage in some sort of a free-form exercise of applying equity simply because it thinks it's merited. There has to be some sort of linkage from the district court's application of equity to the statute. And I think that's the key point here is that there just isn't any linkage like that in this case. The district court really did collapse this consideration into this sort of who's good and who's bad. And then I'd also point out that there are genuine issues of material fact in that determination. It's not as one-sided as presented. There are the facts that underlie the 2002 letter that Mr. Crane discussed are disputed. Thank you. Thank you, Mr. March. I think we have your argument. Thank you, Your Honor. Based on the submission. Thank you, sir. Thank you. The honorable court is adjourned until tomorrow morning at 10 a.m. Thank you.